**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Business Credit & Capital II LLC,

        **Petitioner,**

   -against-

NEURONEXUS, INC. AND DARYL
WAKEFIELD,

        **Respondents.**

1:18-CV-03374 (ALC)

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

    Respondents NEURONEXUS, INC. and DARYL WAKEFIELD ("NNI" or

"Respondents") move to vacate an arbitration award issued by the American Arbitration

Association ("AAA") on February 2, 2018 (the "Award") in favor of Petitioner Business Credit

& Capital II, LLC ("BCC" or "Petitioner"). ECF Nos. 1, 13. Respondents also move to dismiss

this action pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

Petitioners request the Court to confirm the arbitration award. ECF No. 16. For the following

reasons, Respondents' motions to vacate and dismiss are **DENIED** and Petitioner's application

to confirm the award is **GRANTED**.

**BACKGROUND**

**I.**    **Purchase Agreements**

    Petitioner BCC invests in commercial entities and offers merchant cash advances

("MCA") to assist merchants with paying employee salaries, cash flow, purchasing additional

inventory, or to meet other various financial needs. ECF No. 1. Specifically, BCC purchases

merchants' future receivables for a specified purchase price (i.e., the cash advance) and recovers

1

its purchased receivables over time by taking a portion of the merchant's daily receivables until all the purchase price is recovered.

The Parties entered into two separate Future Receivables Purchase and Sale Agreements on December 28, 2016 and February 14, 2017 (collectively the "Agreements"). Under the 2016 agreement, BCC purchased NNI's interest in 15.03% ("Specified Percentage") of each future sales receipt to be generated in the course of its business ("Future Receivables") until $144,000 ("Specified Amount") was collected, in exchange for the $100,000 purchase price paid by Petitioner to NNI. Under the 2017 agreement, BCC purchased NNI's interest in 14.28% of its Future Receivables until the amount of $18,720.00 is collected in exchange for the $13,000 purchase price BCC paid to NNI. *Id.*

Under each agreement, there is no breach if no sales are made. However, pursuant to section 2.1[ii] of each agreement, and Respondent Wakefield's guaranty, Respondents were not allowed: 1) to use an undisclosed bank account or take any action to cause the Future Receivables to be settled to an account other than the one designated by the Parties; 2) to revoke or cancel any of the authorizations given to Petitioner to debit the account; or 3) encourage its customers to pay in a manner untraceable by BCC, thereby preventing BCC from collecting its percentage of the receivables. *See id.*[1]

Each agreement provides for BCC to collect the purchased Future Receivables (as they are generated) by debiting an account maintained by NNI and designated by the parties ("Designated Bank Account") via ACH debit. *See id.* § 1.7

---

[1] Each agreement is titled "Future Receivables Purchase and Sale Agreement" and provides:
"[NNI] hereby sells, assigns and transfers to BCC II (making BCC II the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of [NNI's] future accounts, contract rights and other obligations arising from or relating to the payment of monies from [NNI's] customers' and/or other third party payors (the "Future Receivables" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of NNI's business), for the payment of [NNI's] sale of goods or services until the amount specified below (the "Specified Amount") has been delivered by [NNI] to BCC II."

Although BCC's purchase under each agreement is limited to the Specified Percentage of the Future Receivables, each agreement provides for BCC to debit a daily fixed amount ("Specific Daily Amount") of $895.66.[2] *See, id.*

The Agreements do not provide BCC with an absolute right to collect the Specific Daily Amount or total amount purchased, as Petitioner's right to be paid the Specific Daily Amount is subject to NNI's right of reconciliation. The Agreements provide that Petitioner may debit the Specific Daily Amount each business day, but if NNI demands reconciliation, and if NNI provides Petitioner with its monthly bank statements, Petitioner will reconcile NNI'S account by either crediting or debiting the difference from or back to its bank account so that the amount debited per month equals the Specified Percentage. *Id.* However, NNI forfeits its right of reconciliation if it fails to provide Petitioner with the necessary statements. *Id.*

## II.    Procedural History

On April 25, 2017, Petitioner filed suit in New York State Supreme Court, King County, Index No. 507985/17, contending that Respondents breached the Agreements by changing the Designated Accounts without Petitioner's consent. ECF No. 1-1 p. 2. Respondents removed the action to United States District Court, Eastern District of New York. No. 1:17-02713 ("EDNY action"). *Id.* On May 10, 2017, pursuant to the Agreements' arbitration clauses and the Federal Arbitration Act ("FAA"), Respondents served Petitioner and the EDNY Court a "Notice of Defendants' Election to Arbitrate." *Id.* Accordingly, Petitioner commenced Arbitration proceedings and voluntarily dismissed the EDNY action. *Id.*

Parties disputed whether the Agreements should be considered loans subject to New York's Usury Laws. Respondents did not dispute that they executed the Agreements. They also

---

[2] The fixed amount was a projection based on an average of NNI's historical total deposits multiplied by the agreed-upon percentage and divided by the number of business days in that month. Thus, for each agreement, the Specific Daily Amount was fixed at $895.66.

acknowledged their failure to deposit all purchased Future Receivables collections into the Designated Account, and thus, breached the Agreements. ECF No. 1-1 p. 50. However, Respondents asserted that "[t]he underlying transaction was a criminally usurious loan under NY Penal Law § 190.40, which make the underlying transaction, including the arbitration clause, void and unenforceable." *Id*. at 43. Petitioner argued that: 1) the agreements have no absolute payment obligation and are therefore not loans since the amount collected depended on NNI's expected future collections which are uncertain in both the time for payments; and 2) New York Penal Law § 190.40 is inapplicable. *Id*. at 53

After carefully considering the Parties' legal arguments, affidavits, and copies of the agreements executed by Respondent Daryl Wakefield, William F. Chandler of the AAA ruled in Petitioner's favor. *Id*. The Arbitrator enumerated several facts demonstrating that Respondents' allegation that the Agreements violated NY Penal Law § 190.40 lacked merit. *See id*. at 45-53.

Petitioner thereafter filed the instant action to confirm the award in the Supreme Court, New York County. *Id*. at 7. Respondents removed that action to this Court and now move to vacate the Award. ECF Nos.1, 13. Respondents also move, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6), to dismiss the action for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. ECF No. 13.

## DISCUSSION

### I. Motion to Dismiss

The Court will review the 12(b) motions first. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground

selected for dismissal likewise compels considering jurisdiction and venue questions first.");

*Phoenix-Dolezal v. Lili Ni*, No. 11 Civ. 3722(LAK)(JLC), 2012 WL 121105, at *4 (S.D.N.Y.

Jan. 17, 2012) (Report and Recommendation). This is also prudent as the motions have different

consequences for a litigant, for instance, petitioner's ability to re-file a claim. *Arrowsmith*, 320

F.2d at 221 ("A dismissal for lack of jurisdiction or improper venue does not preclude a

subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon

which relief can be granted is with prejudice.")

**A. Personal Jurisdiction and Proper Venue**

A court applies the same standard of review in Rule 12(b)(3) dismissals for improper

venue as Rule 12(b)(2) dismissals for lack of personal jurisdiction. *See Gulf Ins. Co. v.

Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). To avoid dismissal for lack of personal

jurisdiction under Rule 12(b)(2), Plaintiff must establish personal jurisdiction over defendant.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

Prior to discovery, a plaintiff may meet its burden of making prima facie showing of personal

jurisdiction through factual allegations, which must be presumed true. *See Glob. Gold Min., LLC

v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015). Under this standard, BBC made prima

facie showing of personal jurisdiction. BBC alleged that by signing each agreement underlying

the arbitration award, NNI consented to the jurisdiction of any federal court in New York.

*See* ECF No. 1-1 at 14, 26. Furthermore, NNI also agreed to arbitrate disputes in New York. *Id.*

An agreement to arbitrate in a state constitutes consent to personal jurisdiction in that state. *Glob.

Gold Min., LLC*, 612 F. App'x at 13. *see Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2d

Cir. 1996).

As to Respondents' improper venue claim, Section 4.6 in each agreement contains the parties' express waiver to challenge personal jurisdiction or proper venue. *Id.* Furthermore, pursuant to Section 9 of the FAA, jurisdiction and venue is appropriate in any jurisdiction to which the parties have agreed. 9 U.S.C. § 9. If no court is specified in the parties' agreement, then such application may be made to the District Court "in and for the district within which [the] award was made." *Id.*

Here, the Court finds multiple grounds to assert personal jurisdiction over Respondents. Each agreement's forum selection clause, as well as each agreement's arbitration provision, unmistakably designate New York County as the venue for the arbitration and any court action. *See* ECF No. 1-1, § 4.7 at 16, 26. Moreover, the arbitration in this matter was held in New York City. Therefore, jurisdiction and venue are proper in this Court, and Respondents' motion to dismiss is **DENIED**.[3]

## II.     Motion to Vacate Arbitration Award

Courts must give great deference to an arbitrator's decision. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). The Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., only allows for vacatur if: (1) the arbitral award "was procured by corruption, fraud, or undue means;" (2) "there was evident partiality or corruption in the arbitrators;" (3) "the arbitrators were guilty of misconduct . . . by which the rights of any party have been prejudiced;" (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

---

[3] NNI also argues that BBC's petition or complaint fails to state a claim upon which relief can be granted. NNI bases this argument on its belief that the agreements underlying the dispute and the Arbitration Award are void and unenforceable. Petitioner failed to address this issue in their opposition brief. ECF No. 16. However, for the reasons stated below, Respondents' motion to dismiss pursuant to 12(b)(6) is DENIED.

Furthermore, the Second Circuit maintains that courts may vacate an arbitral award if it "exhibits a 'manifest disregard of law.'" *Duferco*, 333 F.3d at 388 (citing *Goldman v. Architectural Iron. Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002). Courts applying the "manifest disregard" standard are "'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" *STMicroelectronics, N.V. v. Credit Suisse Sec.* (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). A court can grant vacatur for manifest disregard of the law only if (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *EB Safe, LLC v. Hurley*, No. 1:17-CV-06163 (ALC), 2018 WL 2225003, at *2 (S.D.N.Y. May 15, 2018) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011))

Clear disregard of the evidence is not a proper basis for vacatur. *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004). Under the manifest disregard theory, an arbitrator's legal conclusions will be "confirmed in all but those instances where there is no colorable justification for a conclusion." *Id.* Courts may only "look upon the evidentiary record of an arbitration proceeding" to "discern[] whether a colorable basis exists for the panel's award so as to assure that the award" was "not the result of the panel's manifest disregard of the law." *Id*; *see EB Safe*, WL 2225003, at *2. Courts, however, cannot reassess the evidentiary record. *Id.* "Instead, whatever the weight of the evidence considered as a whole, '[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.'" *Id.* (citing *Wallace*, 378 F.3d at 193).

## A. Review of the Arbitration Award

The Arbitrator's award to Petitioner does not suggest a manifest disregard of clearly applicable New York law, as argued by the Respondents. Specifically, Respondents argue the Award should be vacated because the Arbitrator (1) failed to sustain Respondents' objection stating that "the underlying transaction was a criminally usurious loan under N.Y. Penal Law § 190.40, which made the underlying transaction, including the arbitration clause, void and unenforceable[;]" (2) improperly interpreted N.Y. Penal Law § 190.40 to deny Respondents' objection to the arbitration proceeding; and (3) disregarded N.Y. Penal Law § 190.40 that states that a loan "at a rate exceeding twenty-five per centum or the equivalent for a longer or shorter period" is usurious (i.e., "criminal usury in the second degree"). ECF No. 14. They also claim the Award violates public policy concerns. Respondents' argument is without merit.

First, the Arbitrator cited dozens of appropriate New York cases regarding contract interpretation and Usury law. ECF No. 1-1, p. 38-52. To find that the Agreements were not subject to New York's Usury laws, the Arbitrator relied on *Zoo Holdings, LLC v. Clinton,* 11 Misc. 3d 1051(A), 814 N.Y.S.2d 893 (Sup. Ct. 2006). The court denied plaintiff's request to find that an investment in a series of preferred shares constituted a usurious loan. In the transaction, the shareholders had the power to trigger a 30% return by redeeming the preferred series finding that there was no certainty that the preferred stock would ever be redeemed. The *Zoo Holdings* court stated, "[t]he rudimentary element of usury is the existence of a loan or forbearance of money…Where there is no loan, there can be no usury…Significantly, there is a strong presumption against finding of usury… (citing *Feinberg v. Old Vestal Rd. Assocs., Inc.*, 157 AD 102, 104, 75 N.Y.S.2d 483 (App. Div. 1st Dept 1947). ECF No. 1-1 p. 49. Furthermore, that court held, "[f]or a trust loan it is essential to provide for repayment absolutely and at all events

or that the principal in some way be secured as distinguished form being put in hazard." *Id.* The Arbitrator also relied on various additional New York State authorities to support his position that New York's usury laws did not apply to the Agreements. *See Seidel v. 18 East 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("If the transaction is not a loan, there can be no usury, however unconscionable the contract may be.") (internal quotations omitted); *Abir v. Malky, Inc.*, 59 A.D.3d 646, 649 (2d Dept. 2009). "It must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms." *Bouffard v. Befese*, LLC, 111 A.D.3d 866, 869-870 (N.Y.App. Div.2d Dep't. 2013)

The Arbitrator also relied on several New York decisions relating to MCA transactions similar to the transactions here. In these cases, the courts rejected usury defenses where the terms of the MCA clearly provided that the transactions were not loans but were sales of the seller's bona fide Future Receivables from its customers. *See Seidel*, 79 N.Y.2d at 744; *Abir*, 59 A.D.3d at 649. The Arbitrator found that the four corners of the Agreements made it clear that the transactions were not loans. Furthermore, the Arbitrator noted, the Agreements' terms created purchase and sale transactions with uncertain returns to Petitioner and did not contain a fixed repayment obligation, a stated interest rate, or other evidence of an intent to structure a transaction to avoid New York's usury laws. ECF No. 1-1 p. 52.

The only support Respondents provided to prove the Agreements were criminally usurious and thus void was *Blue Wolf Capital Fund II L.P. v American Stevedoring Inc.*, 105 A.D. 3d 178, 182-184, (App. Div. 1st Dep't 2013).[4] However, consistent with the Arbitrator, the Court finds this case inapposite because the parties there agreed the transaction was a loan and

---

[4] Respondents did not dispute that they executed the Agreements, nor did they dispute that their failure to deposit all collections of the purchased Future Receivables into the Designated Account precipitated a breach of the Agreements.

thus subject to N.Y. Penal Law § 190.40.[5] These facts are not present in the instant case, and thus there is no clear law the Arbitrator knew about and ignored to reach his decision, undercutting Respondents' motion to vacate.

Though Respondents chose to cite a single case in the arbitration, Respondents' moving papers cite additional case law and make intricate calculations to support its claim that the Agreements were in fact loans. ECF No. 14. *See Bakhash v. Winston*, 134 A.D.3d 468, 469, 19 N.Y.S.3d 887 (App. Div.1st Dep't 2015) (holding that interest rates are annualized to determine usur); *People v. Service Institute, Inc.*, 101 Misc. 2d 549, 550-553 (1979); *Merch. Cash & Capital LLC v. Edgewood Grp., LLC*, 2015 U.S. Dist. LEXIS 94162, at *10-12 (S.D.N.Y. July 2, 2015.) Not only does the Court find these recent arguments unpersuasive, to now view the Agreements as loans would force the Court to impermissibly reassess the evidentiary record. Courts may only review an arbitration award's evidentiary record to "discern[] whether a colorable basis exists for the panel's award" and not whether the arbitral panel's decision reflects a manifest disregard of the evidence. *Wallace*, 378 F.3d at 193.

Here, Respondents provide little evidence to show that the Arbitrator failed to apply relevant law. In fact, Respondents recite cases the Arbitrator considered and allege they were misinterpreted. Considering governing law, Respondents have not only failed to prove the Arbitrator's manifest disregard of law, they also provide no basis for the Court to reconsider the evidentiary record. Therefore, as the Court must grant a high degree of deference to the

---

[5] In *Blue Wolf Capital Fund*, the parties entered into a demand loan agreement and executed a secured promissory note for the principal amount of $1,130,000 with a 12% stated interest rate. Plaintiffs ("BWC"), an investment firm, advanced defendants ("ASI") $805,000 and BWC withheld $125,000 in fees for the current transaction plus an additional $200,000 as a "deposit against future commitment fees" in the event ASI's obligations under the promissory note were rolled into a subsequent BWC financing. *Id*. BWC did not commit to provide additional financing and, in the event a second financing was not completed in a specified time, BWC reserved the right to retain all or a portion of the $200,000 deposit. *Id*. A second financing did not occur and BWC retained $100,000 of the deposit and returned only $100,000. The court found that the fees were additional interest resulting in an actual interest rate of 57.14% and found the loan transaction void and unenforceable as usurious under New York law.

Arbitrator, and because the Court finds a "barely colorable justification" for the award, the Court denies Respondents' motion to vacate and confirms the award.

## CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss is **DENIED**; Respondents' Motion to Vacate the Arbitral Award is **DENIED**; and Petitioner's Application to Confirm the Arbitral Award is **GRANTED**.

**SO ORDERED.**

Dated: March 29, 2019

New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**